**James Robert McQUEARY, Petitioner,**

v.

**James BLODGETT, Superintendent, WSP; Corrections, Dept of; Indeterminate Sentencing Review Board, Respondents.**

**No. 89–35817.**

United States Court of Appeals, Ninth Circuit.

Submitted Oct. 1, 1990.*

Decided Jan. 10, 1991.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Paul J. Lyon, Walla Walla, Wash., for petitioner.

Thornton Wilson, Asst. Atty. Gen., Olympia, Wash., for respondents.

Before KOZINSKI, O'SCANNLAIN and FERNANDEZ, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

James Robert McQueary appeals from dismissal of his petition for a writ of habeas corpus.

I

The parties agree that this court has jurisdiction, if at all, under 28 U.S.C. § 2254, which provides that federal courts "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court *only* on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (1988) (emphasis added). The district court concluded that McQueary had failed to present a cognizable claim under the Constitution or laws or treaties of the United States. Because we agree with that conclusion, we affirm dismissal of the petition.[1] See Fed.R.Civ.P. 12(b)(6).

II

Appellant McQueary was convicted of first-degree assault on his own plea on August 4, 1976. His crime involved the assault, stabbing, and abandonment of a woman in a secluded, wooded area. Following his conviction, the trial court imposed a life sentence with no recommendation for a minimum term of confinement. The prosecution recommended seventy-five years, and the state Board of Prison Terms and Paroles (now called the Indeterminate Sentence Review Board) decided upon fifty years.

In 1985, McQueary filed a "personal restraint petition," a Washington civil action, to challenge the legitimacy of his sentence. He claimed that he was entitled to be sentenced under the Sentencing Reform Act of 1981 ("SRA").[2] The Washington Court of Appeals, which has jurisdiction in such actions, dismissed the petition for failure to state a claim. *See In the Matter of McQueary,* No. 16826-6-I (Wash.Ct.App. Sept. 23, 1985) [hereinafter *McQueary I-A*]. The court concluded that McQueary had no right to have the SRA applied to his case. Agreeing that the SRA "does not apply retroactively to minimum terms set prior to the Act's effective date," the Washington Supreme Court denied discretionary review. *In the Matter of McQueary,* No. 52122-1 (Wash. Nov. 4, 1985) [hereinafter *McQueary I-B*].

In 1986, McQueary filed another personal restraint petition in which he (a) reasserted his initial claim and (b) contended that the SRA's new policies for inmate progress hearings are illegal. The Washington Court of Appeals dismissed the first issue as res judicata and dismissed the second

---

1. Although we find that appellant's claims are not cognizable, we do *not* reach that result on the basis of appellee's arguments. Appellee's brief contends that the petition must fail because appellant's challenges are solely directed toward Washington state law. That is hardly a fatal flaw. The writ of habeas corpus exists precisely to allow federal-based challenges to state law. Appellant's claims must fail not be-

cause they challenge *state laws* but rather because the *facts* alleged, even if proven, would not establish that such laws violate the laws or Constitution of the United States.

2. Like the Federal Sentencing Guidelines, the SRA eliminated the concept of parole and instituted a matrix of "determinate" sentence ranges.

for failure to state a claim. *See In the Matter of McQueary*, No. 18231–5–I (Wash.Ct.App. July 22, 1986) [hereinafter *McQueary II*].

In 1987, McQueary tried an alternative approach and petitioned the United States District Court for a writ of habeas corpus. He alleged due process and equal protection violations in the state's failure to reduce his sentence under the SRA. The court denied the petition because, while the suit was pending, McQueary " 'received the relief which he originally requested.' " after conducting one of its reviews, the Review Board decided to reduce McQueary's minimum term by more than half—from fifty years to 280 months. Brief for Appellant–Petitioner at 3 (quoting trial record).

Despite the magnitude of this reduction, however, McQueary's new minimum term still grossly exceeded the SRA's "standard sentence range" for his offense: 87–117 months. The Review Board justified retention of the additional time by pointing to seven aggravating circumstances: (1) abduction of the victim by deception, (2) attempted rape, (3) twice choking the victim to unconsciousness, (4) severely wounding the victim, (5) abandonment of the victim after inflicting the wound, (6) likelihood of posing a continual threat to women, and (7) the prosecutor's recommendation.

McQueary remained unsatisfied and in 1987, he filed a third personal restraint petition. Although the Washington Court of Appeals acknowledged that three of the grounds relied upon by the Review Board "arguably would not qualify as aggravating circumstances under the Sentencing Reform Act," the court concluded that "the remaining factors justify the Board in setting petitioner's term of confinement outside the presumptive range." [3] The Washington Supreme Court agreed, noting that McQueary's abandonment of his severely wounded victim constituted "an act of deliberate cruelty" sufficient in itself to justify an extended minimum term under the SRA. *McQueary IV–B* at 1; *see supra* note 3. Satisfied that enough "factors support the exceptional sentence," the supreme court declined to review the appellate court's denial order. *Id.*

The present action represents McQueary's fifth attempt to persuade the judicial system to reduce his minimum term.[4] He has failed three times in the state courts and twice in the federal district court. In the current appeal, he presents three constitutional claims. He alleges that the state's insistence upon a term that exceeds the "standard sentence range" specified in the SRA constitutes (1) a denial of due process, (2) a denial of equal protection, and (3) cruel and unusual punishment. *See* U.S. Const. amends. XIV, VIII.

### III

### A

We review a district court's dismissal of a habeas petition *de novo*. *See Weygandt v. Ducharme*, 774 F.2d 1491, 1492 (9th Cir.1985). Although the district court ultimately concluded that an evidentiary hearing was not necessary, *see McQueary v. Blodgett*, No. C89–246R at 1 (W.D.Wash. Oct. 10, 1989) [hereinafter *McQueary V–A* ] (order denying habeas petition), it did conduct a thorough investigation of appellant's allegations. *See* Magistrate's Report and Recommendation, No. C89–246R (W.D.Wash. July 31, 1989) [hereinafter Magistrate's Report]. After conducting our own independent review, we conclude that the district court correctly viewed the facts and the record in this case. Appellant cannot claim that he has

---

3. *In the Matter of McQueary*, No. 20711–3–I at 2 (Wash.Ct.App. Oct. 23, 1987) [hereinafter *McQueary IV–A* ] (dismissing personal restraint petition), *review denied, In the Matter of McQueary*, No. 54517–1 (Wash. Feb. 2, 1988) [hereinafter *McQueary IV–B*]. The court agreed with appellant that (1) abduction, (2) attempted rape, and (3) severity of the victim's stab wound were all factors either not proven in the case or already incorporated into the sentencing calculations for first-degree assault. *See id.*

4. A sixth effort is already in progress in the form of another habeas corpus petition. In that action, appellant apparently alleges an involuntary guilty plea.

been denied the independent consideration owed him by the federal courts. The pertinent facts are not in dispute, and denial of an evidentiary hearing was entirely proper. *See* 28 U.S.C. § 2254(d) (1988) (explaining when federal courts must provide evidentiary hearings to habeas petitioners); *see also Townsend v. Sain,* 372 U.S. 293, 310–19, 83 S.Ct. 745, 755–60, 9 L.Ed.2d 770 (1963); *Brown v. Allen,* 344 U.S. 443, 463, 73 S.Ct. 397, 410, 97 L.Ed. 469 (1953) ("Where the record of the application [for habeas relief] affords an adequate opportunity to weigh the sufficiency of the allegations and the evidence, and no unusual circumstances calling for a hearing are presented, a repetition of the trial is not required.").

### B

One other threshold matter deserves comment. Because federal habeas is an extraordinary remedy that requires a federal court's intrusion upon a sovereign state's exercise of its own police power, the Supreme Court long ago laid down the rule that a petitioner must first exhaust every available avenue of relief at the state level before raising his claims here. *See Ex parte Royall,* 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886); *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). That requirement is now also statutory. *See* 28 U.S.C. § 2254(b) (1988).

■ Appellee argued below that appellant had not previously raised his third claim, the eighth amendment charge, in the state courts.[5] *See* Magistrate's Report at 5. The district court found on the contrary that appellant had given "the highest state court in Washington 'a fair opportunity to consider the claim[ ] and to correct the asserted constitutional defect[ ].' " *Id.* at 6 (quoting *Hudson v. Rushen,* 686 F.2d 826, 830 (9th Cir.1982), *cert. denied,* 461 U.S. 916, 103 S.Ct. 1896, 77 L.Ed.2d 285 (1983)). We agree that "[t]he facts upon which [Appellant] relies to support his federal habeas claim are the same as those relied upon in state court, and [that] the substance of his

arguments has been fairly presented" at the state level. Magistrate's Report at 6; *see McQueary V–A* at 1. We conclude, therefore, that this court may proceed to consider the petition.

### IV

■ Appellant's first claim—that the state's refusal to reduce his minimum term denies his right to due process—is not a cognizable constitutional claim on the facts alleged. Appellant does not argue that he was denied due process in the *imposition* of his sentence; indeed, the record shows that he has had a full and fair opportunity to have his case heard—both before the state courts and before the Review Board. Appellant alleges constitutional flaws neither in the state's sentencing procedures nor in the procedures the state provides for reviewing its sentences. Rather, appellant challenges the *substantive result* of all those procedures: the actual sentence itself.

■ In essence, appellant argues that his minimum term is arbitrarily excessive and unfair. He asserts that it is a denial of the "liberty interest" the state allegedly vested in him when the SRA went into effect and created a "reasonable expectation of a reduced sentence." Brief for Appellant–Petitioner at 12. We are not persuaded and conclude that the state has created no such liberty interest and that any expectation appellant has to the contrary is unreasonable.

For the proposition that a particular statutory scheme may create a liberty interest so that departures from it constitute a denial of due process, appellant cites *Greenholtz v. Inmates of the Neb. Penal and Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). *See id.* at 9, 12, 99 S.Ct. at 2104, 2106. Appellant's reliance on *Grcenholtz* is misplaced. In *Greenholtz,* a class of Nebraska state prisoners asserted that the state's refusal to grant them parole constituted a denial of due process. The statutory system that

---

5. Appellee has apparently abandoned the exhaustion argument for this appeal, but because

exhaustion is a prerequisite to this court's jurisdiction, we address it *nostra sponte.*

governed the prisoners' incarceration had vested the state Board of Parole with full discretion over the challenged decisions. *See* 442 U.S. at 4, 99 S.Ct. at 2102. In a holding that reversed the Eighth Circuit, the Supreme Court found no liberty interest and hence, no denial of due process. Writing for the Court, Chief Justice Burger explained:

> There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.... [T]he conviction, with all its procedural safeguards, has extinguished th[e] liberty right: "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty."

*Id.* at 7, 99 S.Ct. at 2104 (quoting *Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 *reh'g denied,* 429 U.S. 873, 97 S.Ct. 191, 50 L.Ed.2d 155 (1976)).

As appellant himself admits, "*Greenholtz* holds that the promise of parole per se is not a liberty interest, in due process analysis." Brief for Appellant–Petitioner at 9. Appellant contends, however, that the Court's opinion implicitly acknowledged that a statutory scheme *could* create a liberty interest in release before the expiration of a valid sentence, even if the Nebraska statute at issue in *Greenholtz* was not itself such a scheme. While it is possible, of course, for a sentencing statute to be designed in a way that creates a pre-expiration liberty interest, one must presume such a statute a very rare exception to the general rule. We read *Greenholtz* for the general rule. Legislators do not likely intend to create liberty interests when they draft guidelines to govern the imprisonment of state convicts. The discretionary element in state sentencing laws is not there to provide a handle for prisoners to grab onto and translate into entitlements; it is there to provide the authorities with flexibility to respond to individual case needs. Under our reading, then, *Greenholtz* is a leading precedent in the case for appellee.

Even acknowledging the theoretical possibility that the SRA represents an exception to the *Greenholtz* rule, however, appellant has alleged no facts which, if proven, would establish that the SRA *is* such an exception and is a liberty-creating scheme. Because we find no liberty interest, there was no denial of due process.

V

■ On the facts alleged, appellant has also failed to state an equal protection claim. The fourteenth amendment's equal protection clause " 'announces a fundamental principle: the State must govern impartially. General rules that apply evenhandedly to all persons within the jurisdiction unquestionably comply with this principle.' " *Jones v. Helms,* 452 U.S. 412, 423, 101 S.Ct. 2434, 2442, 69 L.Ed.2d 118 (1981) (quoting *New York City Transit Auth. v. Beazer,* 440 U.S. 568, 587, 99 S.Ct. 1355, 1366, 59 L.Ed.2d 587 (1979)). The applicable Washington sentencing law applies evenhandedly: appellant received a sentence authorized by state law for all class-A felons.

■ The enactment of the SRA and its application to post–1984 convicts does not alter the result. As this court explained in another recent opinion that also dealt with the SRA:

> There is no denial of equal protection in having persons sentenced under one system for crimes committed before July 1, 1984 and another class of prisoners sentenced under a different system. *See Frazier v. Manson,* 703 F.2d 30, 36 (2d Cir.), *cert. denied,* 464 U.S. 934 [104 S.Ct. 339, 78 L.Ed.2d 308] (1983). The standard is of a rational relation to governmental purpose. *Schweiker v. Wilson,* 450 U.S. 221, 230 [101 S.Ct. 1074, 1080, 67 L.Ed.2d 186] (1981). Improvement in sentencing is rational governmental purpose. *Mistretta v. United States,* [488] U.S. [361, 109 S.Ct. 647, 102 L.Ed.2d 714] (1989).

*Foster v. Washington State Board of Prison Terms and Paroles,* 878 F.2d 1233, 1235 (1989).[6]

6. Appellant has not alleged a denial of equal protection based upon his membership in any

To conclude that the relevant Washington sentencing law is evenhandedly *applicable* does not entirely dispose of the matter, however. The equal protection clause also requires that the law be evenhanded *as actually applied.* Under the prevailing rational-basis test, plaintiffs in appellant's position bear the burden of establishing a prima facie case of uneven application.[7] Here, appellant has alleged no facts sufficient to establish such a prima facie case. Appellant points to a few instances in which Washington state felons have allegedly received sentences more lenient than his for offenses more serious than his. These allegations, even if proven, would not make out a prima facie case for two reasons. First, a mere demonstration of inequality is not enough; the Constitution does not require *identical* treatment. There must be an allegation of invidiousness or illegitimacy in the statutory scheme before a cognizable claim arises: it is a "settled rule that the Fourteenth Amendment guarantees equal laws, not equal results." *Personnel Adm'r v. Feeney,* 442 U.S. 256, 273, 99 S.Ct. 2282, 2293, 60 L.Ed.2d 870 (1979). Second, as we have already suggested, comparison with the sentences of post–1984 inmates is not relevant because different laws properly apply to the two classes. The comparisons appellant offers, however, are only of this sort. To have stated a cognizable claim, appellant would have to have alleged that prisoners convicted of first-degree assault on similar facts who were sentenced before July 1984 have *systematically* received lesser sentences than he. This he has not done. His equal protection claim must therefore be dismissed.

## VI

Finally, we must address the claim that appellant's sentence constitutes cruel and unusual punishment in violation of the eighth amendment, as applied to the states through the fourteenth amendment. A criminal penalty constitutes cruel and unusual punishment if it: (a) "involve[s] the unnecessary and wanton infliction of pain," *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 *reh'g denied,* 429 U.S. 875, 97 S.Ct. 197, 50 L.Ed.2d 158 (1976), (b) is "grossly disproportionate to the severity of the crime," *Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981) (citing *Coker v. Georgia,* 433 U.S. 584, 592, 97 S.Ct. 2861, 2866, 53 L.Ed.2d 982 (1977) (plurality opinion)), or (c) otherwise "shocks the conscience and sense of justice of the people." *United States v. Rosenberg,* 195 F.2d 583, 608 (2d Cir.), *cert. denied,* 344 U.S. 838, 73 S.Ct. 21, 97 L.Ed. 652 *reh'g denied,* 344 U.S. 889, 73 S.Ct. 134, 97 L.Ed. 687 (1952).

We measure the dynamic meaning of these abstract terms by reference to the "evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590,

---

suspect class; he has alleged a denial based upon his membership in the class consisting of Washington state prisoners sentenced before July 1984. The alleged constitutional inequality derives from the necessarily bifurcated nature of Washington's sentencing system following enactment of the SRA. We apply rational-basis review to this type of equal-protection complaint.

7. *See Christian Science Reading Room v. City and County of San Francisco,* 807 F.2d 1466, 1470 (9th Cir.1986) (denial of rehearing) (Norris, J., dissenting) ("Because we are not a 'superlegislature' that sits in judgment on 'the wisdom or desirability of legislative policy,' we must start with a strong presumption that governmental classifications do not violate the equal protection clause unless they burden a suspect class or a fundamental interest.") (quoting *City*

of *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976) (per curiam)), *cert. denied,* 479 U.S. 1066, 107 S.Ct. 953, 93 L.Ed.2d 1002 *reh'g denied,* 480 U.S. 912, 107 S.Ct. 1361, 94 L.Ed.2d 531 (1987); Comment, 25 How.L.J. 341, 357 (1982) (footnotes omitted):

[T]he first tier of review, utilized by the Court [in equal protection analysis,] has been acknowledged as the "rational basis test." This test asks whether the challenged legislation bears a rational relationship to a permissible state objective. The burden of proof rests with the person alleging unconstitutional discrimination. This standard has rarely been utilized by the Court to invalidate a state provision, and normally gives great deference to the validity of the questioned provision. *See also supra* note 6.

598, 2 L.Ed.2d 630 (1958) (opinion of Warren, C.J.). As the Supreme Court recently explained, "In discerning those 'evolving standards,' we ... look[ ] to objective evidence of how our society views a particular punishment today.... The clearest and most reliable objective evidence of contemporary values is the legislation enacted by the country's legislatures." *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 2953, 106 L.Ed.2d 256 (1989).

Appellant alleges no facts to demonstrate that his sentence offends our nation's "evolving standards." His sentence fits well within the prescribed limits of the statute pursuant to which he was sentenced, and he has not alleged that that statute was "out of touch" with prevailing national standards at the time of his sentencing (or thereafter). In fact, at the time of appellant's sentencing, Washington state judges were required to give a felon in appellant's classification a maximum term of *"not less than* twenty years." § 9A.20.020(1)(a) (emphasis added). Appellant's current minimum term of 280 months exceeds that floor by only 3.3 years. Moreover, appellant's sentence would not even be extreme under the terms of the SRA, the law under which appellant would like to be sentenced and a law to which he has posed no eighth-amendment objections. *See* § 9.94A.120(11) (Supp.1990) (incorporating § 9A.20.020(1)(a) into the SRA by reference). In short, appellant has alleged no facts sufficient to demonstrate wanton infliction of pain, gross disproportionality between his sentence and his offense, or otherwise shocking conduct on the part of Washington state.

### VII

The district court correctly dismissed appellant's habeas corpus petition for failure to state a cognizable federal claim. Appellant's arguments under the due process clause, the equal protection clause, and the eighth amendment are without merit.

AFFIRMED.