Luis M. ALVAREZ, Petitioner,

v.

Dennis STRAUB, Respondent.

No. 97–CV–71822–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 30, 1999.

Luis M. Alvarez, Lapeer, Michigan, plaintiff pro se.

Vincent J. Leone, Lansing, Michigan, for defendant.

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, DISMISSING CLAIM III OF PLAINTIFF'S HABEAS CORPUS PETITION, AND ORDERING RESPONDENT TO FILE AN ANSWER TO PLAINTIFF'S PETITION WITH RESPECT TO REMAINING CLAIMS

ROSEN, District Judge.

This matter having come before the Court on the February 5, 1999 Report and Recommendation of United States Magistrate Paul J. Komives recommending that the Court dismiss Claim III of Plaintiff's petition for a writ of habeas corpus on procedural default grounds and order Respondent to file an Answer on the merits of the petition with respect to the remaining claims;[1] and Petitioner having timely filed Objections to the Magistrate's Report and Recommendation; and the Court hav-

---

1. Although captioned as an "Answer", what Respondent actually filed as an initial response to the petition was a motion for summary judgment or dismissal based upon the argument that *all* of Petitioner's claims were barred by his procedural default. The Magistrate Judge determined in his Report and Recommendation that Petitioner had only procedurally defaulted on Claim III.

ing reviewed the Magistrate Judge's Report and Recommendation, Petitioner's Objections thereto, and the Court's file of this action and having concluded that, for the reasons stated in the Report and Recommendation, Claim III of Plaintiff's petition for habeas corpus relief should be dismissed; and the Court being otherwise fully advised in the premises,

IT IS HEREBY ORDERED that the Magistrate Judge's Report and Recommendation of February 5, 1999 be, and hereby is, adopted by this Court.

IT IS FURTHER ORDERED that, for the reasons set forth in the Magistrate Judge's Report and Recommendation, Claim III of Plaintiff's petition for habeas corpus relief be, and hereby is DISMISSED.

IT IS FURTHER ORDERED that within 30 days of the date of this Order, Respondent shall file with the Court and serve upon Petitioner an Answer addressing the merits of Petitioner's remaining claims (Claims I and II and all subparts thereto).

SO ORDERED.

### REPORT AND RECOMMENDATION

KOMIVES, United States Magistrate Judge.

Table of Contents

I. RECOMMENDATION ............................................... 689
II. REPORT .................................................... 689
 A. Procedural History .................................... 689
 B. Procedural Default Generally .......................... 692
 C. Possible Bases for Finding Default .................... 692
 1. Appellate Courts' Denials of Leave to Appeal ......... 693
 2. Trial Court's Ruling on Petitioner's First Motion ... 693
 3. Trial Court's Ruling on Petitioner's Second and Third Motions ........ 694
 D. Whether Petitioner Has Defaulted Any of His Claims ..................... 694
 E. Whether Claim III May Be Considered on the Merits .................... 696
 1. Cause and Prejudice ........................................ 696
 2. Fundamental Miscarriage of Justice .............................. 699
 F. Conclusion ....................................... 700
III. NOTICE TO PARTIES REGARDING OBJECTIONS ......................... 700

### I. RECOMMENDATION:

The Court should construe defendant's answer to petitioner's application for the writ of habeas corpus as a motion to dismiss or for summary judgment on the basis that petitioner's claims are barred by his procedural default. If so construed, the Court should then conclude that petitioner has procedurally defaulted as to his Claim III but has not procedurally defaulted as to other claims. Accordingly, the Court should dismiss Claim III but order respondent to file an answer addressing the merits of petitioner's remaining claims.

### II. REPORT:

#### A. Procedural History

1. Petitioner Luis M. Alvarez is a state prisoner, currently confined at the G. Robert Cotton Correctional Facility in Jackson, Michigan.

2. On April 23, 1984, petitioner was convicted of possession of 225 to 650 grams of cocaine, MICH.COMP.LAWS § 333.7403(2)(a)(ii), pursuant to his conditional guilty plea in the Oakland Count Circuit Court. Petitioner was sentenced to a term of 20 to 30 years imprisonment.

3. Petitioner appealed as of right to the Michigan Court of Appeals, raising four claims: (1) insufficiency of the search warrant; (2) untimely review in the circuit

court by the prosecution of the district court's notation of dismissal; (3) violation of petitioner's right to a speedy trial; and (4) police officers' promises of leniency precluded incarceration. Pursuant to this conditional guilty plea, petitioner remained free on bond pending his appeal. On May 30, 1985, the court of appeals found no merit in any of these claims and affirmed petitioner's conviction and sentence. *See People v. Alvarez*, No. 79007 (Mich.Ct.App. May 30, 1985) (per curiam) (attached as Appendix 2 to petitioner's brief).

4. Petitioner sought leave to appeal these issues to the Michigan Supreme Court. The Supreme Court denied the application in a standard order. *See People v. Alvarez*, No. 76903 (Mich. Dec. 17, 1985) (attached as Appendix 3 to petitioner's brief).

5. Following the Supreme Court's denial of his application for leave to appeal, petitioner's bond was revoked and he was ordered to commence serving his sentence on December 24, 1985. Petitioner fled, however, and remained at large until his arrest in September 1990 in Florida, where he was living under an assumed name. Petitioner commenced serving his sentence on October 1, 1990.

6. Shortly after he began serving his sentence, petitioner filed a motion for relief from judgment pursuant to MICH.CT.R. 6.500–.509. Petitioner raised several claims of ineffective assistance of counsel, as well as claims that the trial court improperly participated in the plea bargaining process, that his presentence report was stale, and that he did not have an opportunity to review the presentence report. The trial court denied the motion, concluding that petitioner had failed to establish good cause for failing to raise the issues sooner pursuant to MICH.CT.R. 6.508(D)(3). *See* Mot. Hr'g Tr., dated 10/22/91, at 34–35.

7. On December 8, 1992, petitioner filed a second motion for relief from judgment pursuant to MICH.CT.R. 6.500–.509. In this second motion, petitioner reasserted the claims raised in his first motion, and requested resentencing based on an amendment to the statute under which he was convicted. In an amended motion, petitioner added a claim that trial counsel was ineffective by allowing him to plead guilty to an offense carrying a mandatory prison term. The trial court denied the motion, concluding that there was no basis to reconsider the claims raised in petitioner's previous motion and that petitioner had failed to raise a substantial and compelling reason for resentencing. *See People v. Alvarez*, No. 81–48855 FY (Oakland County (Mich.) Cir.Ct. Apr. 21, 1993) (order).

8. In a single notice of appeal, petitioner sought leave to appeal the denial of his two postconviction motions in the Michigan Court of Appeals. The court of appeals denied petitioner's application in a standard order, concluding that he "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Alvarez*, No. 163795 (Mich.Ct.App. Aug. 26, 1993).

9. Petitioner sought leave to appeal in the Michigan Supreme Court. The Supreme Court denied leave to appeal in a standard order, concluding as did the court of appeals that petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Alvarez*, 445 Mich. 913, 519 N.W.2d 893 (1994).

10. On July 17, 1995, petitioner filed a third motion for new trial in the trial court. In this motion, petitioner raised the following claims: (1) the mandatory minimum sentence constituted cruel and unusual punishment, is disproportionate, and violates his rights to due process and equal protection; (2) his plea was involuntary and resulted from ineffective assistance of counsel; (3) the trial court improperly participated in the plea bargaining process; and (4) the trial court improperly relied upon the stale presentence report. The trial court denied petitioner's motion. *See* Video Mot. Hr'g Tr., dated 11/13/95, at 10–11; *People v. Alvarez*, No. 81–48855 FH (Oakland County (Mich.) Cir.Ct. Nov. 13,

1995) (order denying defendant's motion for relief from judgment).

11. Both the court of appeals and the supreme court denied petitioner's applications for leave to appeal, concluding that petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Alvarez*, 454 Mich. 882, 562 N.W.2d 201 (1997); *People v. Alvarez*, No. 191473 (Mich.Ct.App. June 14, 1996).

■ 12. Petitioner filed the instant petition for habeas corpus on April 23, 1997. He raises the following grounds for issuance of the writ of habeas corpus:

I. THE TRIAL COURT'S FAILURE TO COMPORT WITH MCR 6.508(E) AND ISSUE FINDINGS OF FACT AND CONCLUSIONS OF LAW IS A DUE PROCESS VIOLATION REQUIRING THIS COURT TO EXAMINE DE NOVO THE ARGUMENTS PRESENTED.

II. GOOD CAUSE FOR NOT CHALLENGING ON DIRECT APPEAL THE VOLUNTARINESS OF THE PLEA AND THE VALIDITY OF THE SENTENCE IS MET WHERE TRIAL COUNSEL ALSO ACTS AS DIRECT APPELLATE COUNSEL.

A. THE PETITIONER'S PLEA MUST BE VACATED AS IT WAS MADE INVOLUNTARY BY THE TRIAL COURT'S COERCION OF THE PLEA THROUGH THE COURT'S PRE–PLEA ULTIMATUM OF GRANTING AN APPEAL BOND ONLY IF PETITIONER PLEADED GUILTY AS CHARGED BUT NOT IF HE ELECTED TRIAL, THIS FORM OF JUDICIAL PARTICIPATION CONTRAVENES *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) AND U.S. CONST. AMS VI, XIV.

B. WAS COUNSEL'S ADVICE TO PETITIONER THAT THE TRIAL COURT WOULD ONLY GRANT THE PETITIONER AN APPEAL BOND IF THE PETITIONER PLEADED GUILTY AS CHARGED BUT NOT IF HE ELECTED TRIAL ERRONEOUS ADVICE REQUIRING WITHDRAW [sic] OF THE PLEA PURSUANT TO *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); US CONST. AMS VI, XIV?

C. PETITIONER'S CONDITIONAL PLEA MUST BE VACATED AS IT WAS MADE INVOLUNTARY WHEN PETITIONER RELIED ON COUNSEL'S ADVICE THAT ALL FOURTH AMENDMENT CLAIMS HAD BEEN LITIGATED PRE–PLEA AND WOULD BE RAISED ON APPEAL BUT COUNSEL INEXPLICABLY OVER LOOKED A *FRANKS V. DELAWARE*, DEFENSE WHICH HAD BEEN RAISED AT THE PRELIMINARY EXAM; THIS IS CONTRARY TO *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

D. THE SENTENCING JUDGE AND TRIAL COUNSEL'S RELIANCE ON AN UPDATED HOLMES YOUTHFUL TRAINEE REPORT IN LIEU OF AN UPDATED PRESENTENCE REPORT FOR SENTENCING REQUIRES RESENTENCING IN THAT IT IS INCONSISTENT WITH DUE PROCESS, EFFECTIVE ASSISTANCE OF COUNSEL AND THEREFORE CONTRAVENES *Mempa v. Rhay*, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967).

III. IN THE WAKE OF *People v. Bullock*, 440 Mich. 15, 485 N.W.2d 866 (1992), A MANDATORY TWENTY YEAR MINIMUM SENTENCE FOR SIMPLE POSSESSION OF BETWEEN 225 AND 650 GRAMS OF COCAINE IMPOSED IN 1984 REQUIRES RESENTENCING IN

THAT THE SENTENCE VIO-LATES EQUAL PROTECTION.
Petitioner for Writ of Habeas Corpus, at 3.[1]

13. Respondent filed his answer on April 8, 1998. He contends that petitioner's claims are barred by various procedural defaults in the state courts. Because respondent asserts only the procedural default defense and does not address the merits of petitioner's claims, the Court should construe the answer as a motion for summary judgment. As discussed more fully below, the Court should grant the motion with respect to petitioner's Claim III, but should deny the motion with respect to petitioner's remaining claims.

### B. Procedural Default Generally

 Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. *Wainwright v. Sykes*, 433 U.S. 72, 81, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). As the Supreme Court has explained,

> an adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show "cause" for the default and "prejudice attributable thereto," or demonstrate that failure to consider the federal claim will result in a "fundamental miscarriage of justice."

*Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (citations omitted); *see also, Coleman*, 501 U.S. at 729–30, 111 S.Ct. 2546 (The procedural default doctrine "bar[s] federal habeas when a state court declined to address a

prisoner's federal claims because the prisoner had failed to meet a state procedural requirement."). However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris*, 489 U.S. at 263, 109 S.Ct. 1038. Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review ... of a federal constitutional claim." *Ford v. Georgia*, 498 U.S. 411, 423–24, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348–51, 104 S.Ct. 1830, 80 L.Ed.2d 346 (1984)); *see also, Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir.1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.").

 If the last state court judgment is an unreasoned order simply affirming, in a formulary sense, the conviction, the federal court should look through the last order and examine the preceding reasoned order. If that opinion explicitly relies on the procedural default, it should be presumed that the last state court judgment likewise relied on the bar. *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir.1994); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir.1991) (per curiam).

### C. Possible Bases for Finding Default

Before considering whether any of petitioner's claims are barred by a procedural default, two preliminary issues must be addressed. As noted in the preceding sec-

1. Although the introductory sentence to the sub-claims contained within claim II refers to good cause for failing to raise these claims on direct appeal, I construe the sub-claims themselves as raising substantive claims for habeas relief because "a pro se prisoner's [habeas petition] is entitled to a generous construction," *Fields v. United States*, 963 F.2d 105, 109 (6th Cir.1992) (applying rule to a motion to vacate a federal sentence under 28 U.S.C. § 2255).

tion, there are two prerequisites to concluding that a federal habeas claim is barred by a procedural default in the state courts: (1) a firmly established and regularly followed procedural rule; and (2) a clear and express reliance upon the procedural rule by the state court. Thus, the Court must consider whether any of the various state court decisions on petitioner's motions meet these two prerequisites. Generally speaking, for purposes of this analysis, the state courts' orders can be broken down into three categories: (1) the appellate court orders denying petitioner's various applications for leave to appeal; (2) the trial court's order denying petitioner's first motion for relief from judgment; and (3) the trial court's orders denying petitioner's second and third motions for relief from judgment.

### 1. *Appellate Courts' Denials of Leave to Appeal*

The Court should conclude that the appellate courts' denials of petitioner's various applications for leave to appeal are simply unreasoned orders affirming the trial court's orders, and thus do not establish a procedural default under *Ylst*. As discussed in part II.A, *supra*, with respect to each application for leave to appeal the court of appeals and supreme court denied petitioner's applications because petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." However, as discussed above, if the last state court judgment is an unreasoned order simply affirming, in a formulary sense, the conviction, the federal court should look through the last order and examine the preceding reasoned order—*i.e.,* the trial court's orders. *See Ylst,* 501 U.S. at 803, 111 S.Ct. 2590; *Rust,* 17 F.3d at 161; *Couch,* 951 F.2d at 96. As the Supreme Court explained in *Ylst,* this presumption is based on "[t]he maxim ... that silence implies consent, not the opposite—and courts generally behave accordingly, affirming without further discussion when they agree, not when they disagree, with the reasons given below." *Ylst,* 501 U.S. at 804, 111 S.Ct. 2590.

■ Contrary to respondent's assertion, neither the Michigan Supreme Court nor the Michigan Court of Appeals clearly and expressly relied on a procedural bar. These courts merely stated that the petitioner had failed to establish entitlement to relief under MCR 6.508(D). Without any explanation of the matter, this could mean either that petitioner failed to meet the procedural requirements of the rule, or that he had not substantively established entitlement to relief. Without more, this language is insufficient to constitute a reasoned opinion on the matter, and the Court must therefore look to the trial court's opinions denying petitioner's motions for relief from judgment. *See, e.g., Mallory v. Overton,* 45 F.3d 430, 1994 WL 722833, at *2 (6th Cir.1994) (unpublished) (looking to the trial court's opinion to determine whether petitioner procedurally defaulted where Michigan Supreme Court used language denying leave to appeal nearly identical to that used here); *Grant v. Rivers,* 920 F.Supp. 769, 781 (E.D.Mich.1996) (Gadola, J.) (where Michigan Court of Appeals and Michigan Supreme Court denied leave to appeal in standard, one-sentence orders substantially the same as the orders in this case, trial court's opinion denying motion for relief from judgment was last reasoned order on the matter); *Thompson v. Elo,* 919 F.Supp. 1077, 1083 (E.D.Mich.1996) (O'Meara, J.) (same), *overruled on other grounds, Rogers v. Howes,* 144 F.3d 990, 994 n. 5 (6th Cir.1998). Accordingly, the Court must look to the trial court's orders denying petitioner's motions to determine whether the state court's relied upon a procedural bar.

### 2. *Trial Court's Ruling on Petitioner's First Motion*

■ In ruling on petitioner's first motion for relief from judgment, the trial court found that petitioner's claims were barred because he failed to establish good cause for failing to raise the claims on direct appeal. While this statement is sufficient to constitute a clear and express reliance on the procedural bar of MCR

6.508(D)(3), the trial court's ruling on the first motion does not constitute a procedural default for federal habeas purposes because, at the time of petitioner's default—i.e., when he failed to raise these claims on direct appeal in 1985–MCR 6.508 was not a firmly established and regularly followed procedural rule. In relevant part, Rule 6.508 provides that a trial court may not grant a motion for relief from judgment if the motion "alleges grounds for relief ... which could have been raised on appeal from the conviction and sentence or in a prior motion [for relief from judgment]." MICH.CT.R. 6.508(D)(3). However, this rule was enacted in 1989. Thus, at the time of petitioner's alleged default in 1985—that is, when petitioner filed his appeal of right and failed to include these claims—Rule 6.508 was not firmly established and regularly followed. See Rogers v. Howes, 144 F.3d 990, 993–95 (6th Cir. 1998); Davey v. Stegall, 103 F.3d 129, 1996 WL 708336, at *1 (6th Cir.1996) (unpublished order); Tibbs v. Lecureaux, 89 F.3d 835, 1996 WL 306532, at *2 (6th Cir.1996) (unpublished order); Doucet v. Lecureux, 72 F.3d 130, 1995 WL 723185, at *1 (6th Cir.1995) (unpublished order). Accordingly, the trial court's denial of petitioner's first motion for relief from judgment, to the extent that it relies on Rule 6.508 and not some other procedural default (e.g., failure to object at trial), does not bar petitioner's claims.

### 3. Trial Court's Ruling on Petitioner's Second and Third Motions

■ Similarly, to the extent that any procedural bar interposed by the trial court in ruling on petitioner's second and third motions is based on his failure to raise his claims on direct review in 1985, petitioner's claims are not barred. However, to the extent that the trial court barred these claims under Rule 6.508(D)(3) based on petitioner's failure to raise the claims in his first motion for relief from judgment, a valid procedural bar exists. As noted above, petitioner's first motion was filed in October 1990, one year after the rule became effective. Accordingly,

petitioner's failure to raise a claim in his first motion is an adequate and independent state ground barring habeas review, to the extent that the trial court clearly and expressly relied upon this failure. See Jones v. Toombs, 125 F.3d 945, 947 (6th Cir.1997) (MCR 6.508(D)(3) is an adequate, independent state rule barring habeas review as applied to defaults occurring after the rule's enactment).

To summarize: the appellate courts' denials of petitioner's applications for leave to appeal are not reasoned opinions, and thus irrelevant to the procedural default inquiry. Thus, the Court must examine the trial court's opinions rejecting each of petitioner's three motions for relief from judgment to determine whether the trial court clearly and expressly relied upon a procedural rule in denying petitioner's claims. However, to the extent that any such reliance is based on petitioner's failure to raise his claims in his appeal of right, petitioner's claims are not barred here.

### D. Whether Petitioner Has Defaulted Any of His Claims

Turning to the issue of whether any of petitioner's claims are barred by his procedural default, the Court should conclude that petitioner has defaulted as to his sentencing claim based on People v. Bullock (claim III), but has not defaulted as to his other claims.

The only default relied upon by the trial court in barring the claims raised in petitioner's first motion was his failure to raise the claims on direct appeal. The court concluded that petitioner failed to show cause for failing to raising these claims on direct appeal and actual prejudice, and cited to Rule 6.508. See Mot. Hr'g Tr., dated 10/22/91, at 34–35. As noted above, this does not bar petitioner's claims here because Rule 6.508 was not firmly established at the time of petitioner's direct appeal.

Similarly, there are no valid procedural defaults relief upon by the trial court in

ruling on petitioner's second motion which would bar habeas review here. In its order with respect to this motion, the court denied relief with respect to the claims that had been raised in the previous motion "for the same reasons set forth by this Court in denying Defendant's previous Motion." *People v. Alvarez*, No. 81–48855 FY, at 1 (Oakland County (Mich.) Cir.Ct. Apr. 21, 1993) (order denying defendant's motion for relief from judgment). Thus, the bar relied upon by the trial court was the same as that relied upon by the court with respect to petitioner's first motion— his failure to raise these claims on direct review. This, as noted above, does not bas habeas review of these claims. With respect to petitioner's remaining claims, the trial court appears to have rejected these on the merits, concluding that petitioner "failed to raise substantial and compelling reasons for resentencing or setting aside Defendant's plea[.]" *Id.* at 2.

In connection with petitioner's third motion for new trial, the court ruled as follows:

> All right. I have read the briefs. I have reviewed the law that you have provided me with. As far as the issue of withdrawing the plea, that was previously decided by Judge Templin [in petitioner's first motion] and even if it hadn't been, the plea was taken April 23rd of 1984. The matter has been up on appeal several times since then. And the issue, if any, should have been raised and resolved at that time.
>
> The matter of finality comes into play in the judgment and we will not disturb the judgment for these grounds.
>
> As far as the application of the *Bullock* case, it is interesting to note that the Supreme Court indicated that they may be creating an inconsistency in the law when they deal with the element of 650 or more grams and purposely do not touch the 225 to 650 issue.

. . . . .

> In addition, I would note that the *Bullock* case came down in, I believe it was June of 1984. This last appeal motion was—yes, the last motion that went up was filed 12/17 of 1992.
>
> The *Bullock* case was available to Counsel at that time and should have been raised. It was not raised. The issue of finality comes into play and therefore for the various reasons I have enumerated, the motions are denied. The case will stand as it is.

Video Mot. Hr'g Tr., dated 11/13/95, at 9–10.[2]

With respect to the plea issue, the trial court did not rely on an adequate and independent state ground. The court merely cited the trial court's decision with respect to petitioner's previous motion, and declined to revisit the issue. Although the court did refer to petitioner's failure to raise this issue on direct appeal, as has been noted numerous times above this failure does not bar petitioner's habeas claims.

■ However, the court did clearly and expressly rely upon an adequate and independent state procedural rule with respect to petitioner's sentencing claim based on *People v. Bullock* (claim III of the instant petition). The court expressly noted that petitioner's claim was barred by his failure to raise the issue in his previous motion for relief from judgment, which was filed after Rule 6.508 became effective. Although the trial court did not explicitly cite Rule 6.508(D)(3), it is clear that this is the procedural bar being invoked by the court. Further, the fact that the trial court briefly discussed the merits of the claim as an alternative basis for denying the motion does not alter this conclusion. *See Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir.1996); *cf. Harris*, 489 U.S. at 264 n. 10, 109 S.Ct. 1038.

---

2. The trial court mistakenly stated that *Bullock* was decided in June 1984; it was actually decided in June 1992. However, this does

not change the analysis, because *Bullock* was still available at the time of petitioner's December 1992 motion for relief from judgment.

In view of the foregoing, the Court should conclude that petitioner's claim III is barred by his procedural default in the state court unless he meets one of the two exceptions to the procedural default doctrine, and that petitioner's remaining claims are not barred by any state court default. Accordingly, the Court should proceed to consider whether plaintiff can show cause and prejudice or a fundamental miscarriage of justice to allow the Court to consider the merits of claim III, and should order respondent to file an answer addressing the merits of petitioner's remaining claims.

### E. *Whether Claim III May Be Considered on the Merits*

 As discussed above, notwithstanding a petitioner's procedural default in the state courts, a federal habeas court may address a defaulted claim if the petitioner establishes either (a) cause for and prejudice attributable to the default, or (b) that a fundamental miscarriage of justice will occur if the court fails to consider the merits of his defaulted claim.

#### 1. *Cause and Prejudice*

Petitioner is unable to establish cause or prejudice for his default. In his brief, petitioner asserts there was cause for the default because the original judgment of sentence indicated that he was convicted of delivery of cocaine, rather than possession of cocaine. This distinction is important because the *Bullock* decision relates only to the penalties for possession of a controlled substance. Petitioner therefore argues:

> This error was not recognized by post-appeal counsel until well after petitioner had begun his climb up the appellate ladder from the April 21, 1993, trial court order denying reconsideration of the 6.500 motion. On November 30, 1993, the trial court corrected the original Judgment of Sentence to properly indicate the correct conviction was, "simple possession." (See Amended Judgement [sic] App. 8). Until that time post appeal counsel relied on the charge set

forth in the original judgement [sic] in determining what issues to raise. Because *Bullock*, retroactively affects only those offenders convicted to simple possession, and not delivery offenses, the within issue which centers on the holding in *Bullock* was simply not available until the Judgement [sic] of Sentence was corrected to indicate Petitioner was convicted of simple possession of between 225 and 650 grams of cocaine. Pet'r's Br., at 41–42.

 This argument raises essentially two possible bases for cause: ineffective assistance of counsel for failing to recognize that he was convicted of simple possession of cocaine; and unavailability of the claim prior to the judgment of sentence being corrected. However, neither basis is sufficient to establish cause. First, "[a] claim of ineffective assistance of counsel in a state or federal post-conviction proceeding can never establish cause because there is no constitutional right to counsel in post-conviction proceedings." *Gentry v. Trippett*, 956 F.Supp. 1320, 1326 (E.D.Mich.1997) (Gadola, J.); *accord Coleman*, 501 U.S. at 752–53, 111 S.Ct. 2546; *Ritchie v. Eberhart*, 11 F.3d 587, 591–92 (6th Cir.1993). Second, petitioner's *Bullock* claim was not "unavailable" prior to the date the trial court corrected his judgment. Petitioner himself certainly knew that he was charged with and convicted of simple possession, and thus he could have raised this issue earlier in the trial court or on appeal.

Even assuming, *arguendo*, that petitioner could establish cause for his default, he is unable to establish prejudice resulting from the default because his claim is without merit. Petitioner's claim is based on the apparent anomaly in sentencing between those convicted of possession of 650 grams or more of cocaine and those, like petitioner, convicted of possession of 225 to 650 grams of cocaine, an anomaly created by the Michigan Supreme Court's decision in *People v. Bullock*, 440 Mich. 15, 485 N.W.2d 866 (1992). Prior to the court's

decision in *Bullock*, the Michigan sentencing scheme provided for a sentence of life imprisonment without possibility of parole for a person convicted of possessing 650 grams or more of cocaine. *See Bullock*, 440 Mich. at 22, 485 N.W.2d at 868. The Michigan Supreme Court concluded that this provision violated the Michigan Constitution's ban on "cruel or unusual punishments." *See id.* at 37–41, 485 N.W.2d at 875–77. To remedy the constitutional infirmity of the statute, the court ordered that all persons convicted under the statute be granted "the parole consideration otherwise available upon completion of ten calender years of the sentence." *Id.* at 42, 485 N.W.2d at 878.

This decision has created an anomaly because persons convicted of possessing 225 to 650 grams of cocaine-presumably a less serious offense-do not become eligible for parole until they have served 20 years, less good time credits. Under the statute, which has not been amended in relevant part since *Bullock*, a person convicted of possessing 225 to 650 grams is subject to a mandatory minimum term of 20 years, and a maximum term of 30 years. *See* MICH. COMP.LAWS § 333.7403(2)(a)(ii). Under Michigan law, a person sentenced to a minimum term is eligible for parole only after having served that minimum term, less any good time or disciplinary credits. *See* MICH.COMP.LAWS § 791.234(1). The court recognized this anomaly in *Bullock* but declined to address it, *see Bullock*, 440 Mich. at 43 n. 26, 485 N.W.2d at 878 n. 26, and neither the Michigan legislature nor courts have since addressed the issue. Petitioner's habeas claim is that, because of the decision in *Bullock*, persons convicted

of a more serious offense than he are eligible for parole sooner than he will be. Petitioner argues that this violates his right to the equal protection of the laws under the Fourteenth Amendment.

■ Petitioner does not claim that the disparity between his parole eligibility date and those of persons convicted of 650 grams or more of cocaine results from any invidiously discriminatory animus or has any discriminatory effect. Nor does the disparity implicate a fundamental right protected by the Bill of Rights. Thus, this Court's review is narrow, and the only question is whether the distinction created is rational. *See Griffin v. Mann*, 156 F.3d 288, 291 (2d Cir.1998); *cf. Hudson v. United States*, 522 U.S. 93, 118 S.Ct. 488, 495, 139 L.Ed.2d 450 (1997) ("The Due Process and Equal Protection Clauses ... protect individuals from sanctions which are downright irrational."). Under this narrow review, petitioner's challenge fails.

Petitioner's challenge rests primarily upon a questionable premise: that he is being treated more harshly than persons convicted of possessing 650 grams or more of cocaine. While the latter are eligible for parole sooner than petitioner, they are still subject to a potential term of life imprisonment, whereas petitioner is subject only to a maximum of 30 years imprisonment. It is questionable whether petitioner's sentence is more harsh than a sentence of up to life, albeit with an earlier parole eligibility.[3]

In essence, the Michigan Supreme Court's decision did nothing more than convert the sentences of persons possessing 650 grams or more from sentences of

---

**3.** In *People v. Lino*, 213 Mich.App. 89, 539 N.W.2d 545 (1995), the court held in a different context that, as a matter of law, "a long-term indeterminate sentence is less severe than a term of parolable life imprisonment." *Id.* at 98, 539 N.W.2d at 549. This holding was overruled in *People v. Carson*, 220 Mich. App. 662, 560 N.W.2d 657 (1996), in which the court rejected the *Lino* court's conclusion that "a sentence of parolable life is invariably a greater penalty than a sentence of a term of years," *id.* at 673, 560 N.W.2d at 662, and

instead concluded that the issue depends upon the circumstances of the particular case. Nevertheless, the statistics show that only rarely are prisoners sentenced to parolable life terms ever paroled, *see* Jeanice Dagher–Margosian, *Life Means Life: Parole Rarely Granted on Nonmandatory Life Terms*, 73 MICH.B.J. 1184, 1184–85 (1994) (citing Michigan Department of Corrections Statistics), and thus petitioner's sentence is less severe than a parolable life sentence as a factual matter, if not as a matter of law.

life without possibility of parole to life with parole. Under Michigan law, such sentences are subject to parole after 10 years (for offenses committed before October 1, 1992), whereas indeterminate sentences with a minimum term are subject to parole only after the minimum term has been served. *Compare* MICH.COMP.LAWS § 791.234(4) *with id.* § 791.234(1). With respect to sentences for which a mandatory minimum has been imposed, the legislature could rationally conclude that it is appropriate to require a prisoner to serve the minimum term before being eligible for parole. Similarly, as a simple administrative matter the legislature could, and indeed had to, choose some time at which persons serving life sentences become eligible for parole. That this scheme may at times result in the anomalous result of a person being convicted of a more serious crime being eligible for parole sooner than someone convicted of a less serious crime does not render the scheme irrational.

Although there are no cases directly on point, several cases are instructive. For example, the Ninth Circuit rejected an equal protection claim with reasoning applicable here. In *McQueary v. Blodgett,* 924 F.2d 829 (9th Cir.1991), the petitioner argued that application of Washington's Sentencing Reform Act to convictions after its enactment violated the equal protection rights of prisoners like himself who had been sentenced before enactment. The court, applying rational basis review, rejected this claim. First, the court concluded that " '[i]mprovement in sentencing is rational governmental purpose.' " *Id.* at 834 (quoting *Foster v. Washington State Bd. of Prison Terms and Parole,* 878 F.2d 1233, 1235 (1989)). Similarly, in this case the Michigan Supreme Court's decision in *Bullock* was simply a rational improvement in sentencing. Indeed, it could be characterized as compelling, as it was necessary to correct a state constitutional infirmity in the sentencing scheme. Further, in language directly applicable here, the Ninth Circuit rejected the petitioner's challenge that the sentencing scheme was unconstitutional as applied to him. Noting that the petitioner had the burden of establishing a prima facie case of uneven application to prevail on his equal protection claim, the Court concluded that he had failed to do so, reasoning:

> Appellant points to a few instances in which Washington state felons have allegedly received sentences more lenient than his for offenses more serious than his. These allegations, even if proven, would not make out a prima facie case for two reasons. First, a mere demonstration of inequality is not enough; the Constitution does not require identical treatment. There must be an allegation of invidiousness or illegitimacy in the statutory scheme before a cognizable claim arises[.]

*Id.* at 835. Similarly, here petitioner has not even alleged that any persons convicted of possessing more than 650 grams have actually been released prior to serving twenty years (as he must), only that they may have become eligible for parole in a shorter time.[4]

▮ Also analogous is the decision of the Texas Court of Appeals in *McLean v. State,* 787 S.W.2d 196 (Tex.App.1990).[5] In

---

**4.** Indeed, as noted above, *see supra* note 2 (citing Jeanice Dagher–Margosian, *Life Means Life: Parole Rarely Granted on Nonmandatory Life Terms,* 73 MICH.B.J. 1184, 1184–85 (1994)), petitioner is probably unable to make such a showing given the rarity with which prisoners sentenced to parolable life terms are released on parole.

**5.** As the Supreme Court has often noted, the state courts, as co-equal guardians of federal constitutional rights, are perfectly capable of passing on federal constitutional questions. *See, e.g., Rose v. Lundy,* 455 U.S. 509, 518, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Stone v. Powell,* 428 U.S. 465, 494 n. 35, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *Martin v. Hunter's Lessee,* 14 U.S. (1 Wheat.) 304, 341–44, 4 L.Ed. 97 (1816). Thus where, as here, there is a paucity of federal law on the subject, state decisions interpreting the federal Constitution, while not binding, are persuasive. *See Bittaker v. Enomoto,* 587 F.2d 400, 402 n. 1 (9th Cir.1978). This is especially so in habeas cases because, under 28 U.S.C. § 2254(d)(1), habeas relief may be granted only if the state court's decision was contrary to, or an unreasonable application of, federal

*McLean* the court considered a challenge to a Texas parole statute providing that persons who use a deadly weapon are not eligible for parole until serving either one-fourth of the maximum sentence or 15 years, whichever is less. The statute also required, however, that all persons within the provision must serve at least two years. *See id.* at 198. The defendant, who had been sentenced to a three year term of imprisonment, claimed that this statute violated equal protection because he was required to serve two-thirds of his sentence while persons sentenced to terms of eight years or more would be required to serve only one-quarter of their sentences. In particular, the defendant became eligible for parole at the same time as someone serving an eight year term. *See Id.* The court rejected the defendant's equal protection challenge, concluding that the legislature was reasonable in deciding to impose a minimum time before parole eligibility for persons who use a deadly weapon, and that "[a]lthough the scheme may allow a person with a longer sentence to be eligible for parole in the same amount of time, it does not follow that the scheme is unreasonable." *Id.*

Even more on point is the decision of the Illinois Supreme Court in *People v. Nowak*, 387 Ill. 11, 55 N.E.2d 63 (1944). At issue in *Nowak* was an Illinois parole law which provided that a person sentenced to life imprisonment was eligible for parole after 20 years, whereas a person sentenced to term of years was eligible only after serving one-third of his sentence. The defendant, who was sentenced to a prison term of 100 years, argued that this law violated equal protection as applied to him because he would become eligible for parole after serving 33⅓ years, whereas other persons convicted of similar crimes but sentenced to life terms would be eligible after serving only twenty years. The court rejected this claim, noting that issues such as a parole are matters of state prerogative. *Id.* at 65.

In short, petitioner has not alleged, much less shown, that the Michigan parole scheme is irrational or based on some invidiously discriminatory animus. Accordingly, the Court should conclude that his equal protection claim is without merit, and therefore petitioner is not prejudiced by application of the procedural bar to this claim.

2. *Fundamental Miscarriage of Justice*

■■■ A defaulted claim may also be considered on the merits of failure to consider the claim would result in a fundamental miscarriage of justice. However, in this case no such miscarriage would occur by failing to consider petitioner's third claim for two reasons. First, for this exception to apply petitioner must show that the error of which he complains " 'has probably resulted in the conviction of one who is actually innocent.' " *Bousley v. United States*, 523 U.S. 614, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998) (quoting *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)); *accord Kuhlmann v. Wilson*, 477 U.S. 436, 454, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986). "[T]o establish actual innocence, petitioner must demonstrate that, 'in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.' " *Bousley*, 118 S.Ct. at 1611 (quoting *Schlup v. Delo*, 513 U.S. 298, 327–28, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (internal quotation omitted)); *accord Kuhlmann*, 477 U.S. at 455 n. 17, 106 S.Ct. 2616 (citation omitted). Petitioner has made no assertion that he is factually innocent of the crime, and such a claim is foreclosed by his guilty plea because, as the Supreme Court has noted, "a counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it *quite validly* removes the issue of factual guilt from the case." *Menna v. New York*, 423 U.S. 61, 62 n. 2, 96 S.Ct.

law. One of the best indicators of the reasonableness of a decision is how other courts

faced with similar circumstances have decided the question.

241, 46 L.Ed.2d 195 (1975) (per curiam) (emphasis in original).[6]

Further, a claim of actual innocence is not in itself a constitutional claim; rather, it is merely "a gateway through which [the petitioner] seeks to have his otherwise procedurally barred habeas claims considered on their merits." *Washington v. Delo,* 51 F.3d 756, 761 (8th Cir.1995) (citing *Herrera v. Collins,* 506 U.S. 390, 399–401, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993)). As noted above, petitioner's claim is without merit, and thus no fundamental miscarriage of justice will occur by applying the procedural bar to his claim.

### F. *Conclusion*

In view of the foregoing, the Court should conclude that petitioner's Claim III is barred by his procedural default in the state court, and that he can show neither cause and prejudice nor a fundamental miscarriage of justice. Accordingly, the Court should dismiss this claim. However, the Court should also conclude that petitioner's remaining claims are not barred by any state court procedural default, and should order respondent to file an answer addressing the merits of these claims.

### III. *NOTICE TO PARTIES REGARDING OBJECTIONS:*

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D.Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of Health & Human Servs.,* 932 F.2d 505

(6th Cir.1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir.1991). *Smith v. Detroit Federation of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

---

**6.** No case appears to have explicitly adopted such a rule, although some cases have recognized that such a rule may exist. *See, e.g., Brownlow v. Groose,* 66 F.3d 997, 999 (8th Cir.1995) ("We need not decide whether a guilty plea absolutely forecloses a later claim of actual innocence."); cf. *Thomas v. Addison,* 89 F.3d 851 (Table), 1996 WL 330239, at *2 (10th Cir. June 6, 1996) (concluding that petitioner failed to make a showing of actual innocence, noting "the general rule foreclosing collateral attack on a counseled and voluntary guilty plea."); *Deere v. Calderon,* 890 F.Supp. 893, 904–05 (C.D.Cal.1995) ("In sum, the absence of a colorable claim of actual innocence and the record of petitioner's guilty pleas support the view that no fundamental miscarriage of justice will result from enforcing the procedural bar.").