**James Keith MALCUM, Petitioner,**

v.

**Sherry BURT, Respondent,**

No. 02–CV–73261–DT.

United States District Court,
E.D. Michigan,
Southern Division.

July 30, 2003.

Jillvonnie M. Flowers, Detroit, MI, James Malcum, Earnest C. Brooks, Muskegon Heights, MI, for Petitioner.

Brenda E. Turner, William C. Campbell, Michigan Department of Attorney General Habeas Corpus Division, Lansing, MI, for Respondent.

### OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS

HOOD, District Judge.

James Keith Malcum, ("Petitioner"), presently confined at the Brooks Correctional Facility in Muskegon Heights, Michigan, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, both *pro se*, and with the assistance of attorney Jillvonnie M. Flowers. In his application, Petitioner challenges his convictions for two counts of first-degree criminal sexual conduct, M.C.L.A. 750.520b(1)(e); MS.A. 28.788(2)(1)(e); and one count of larceny in a building, M.C.L.A. 750.360; M.S.A. 28.592. For the reasons stated below, Petitioner's applica-

tion for a writ of habeas corpus is dismissed with prejudice.

## I. Background

Petitioner was convicted of the above offenses following a jury trial in the Detroit Recorder's Court. The victim in this case, Robert Penn, testified that he encountered Petitioner at a traffic light in Detroit, Michigan in December of 1993. Penn had known Petitioner for approximately ten years, because Petitioner had been employed at an apartment building where Penn had previously resided. Penn asked Petitioner if he was interested in doing some home improvement work for him and gave him his address and telephone number. Penn saw Petitioner a few days later at a party store and asked Petitioner to call him and set up a time to do some painting on Penn's house. Petitioner never called, however, so Penn hired someone else to do the home improvement work for him. Nonetheless, Penn still wanted Petitioner to contact him in regards to doing some additional painting on his house.

On the night of December 27, 1993, Petitioner stopped by Penn's house while Penn was on the telephone. Penn testified that Petitioner would not leave the house right away and made some comments about the nightshirt that Penn was wearing. Finally, Petitioner left the house. Penn testified that he was going to take a bath and go assist his friend, J. Blacksher, who needed someone to drive around the neighborhood with him. A short time later, Penn heard a knock on the door. Penn opened the door and walked away without seeing who it was. Petitioner entered the house and accused Penn of attempting to "play me for a bitch." Petitioner grabbed a screwdriver and the two men tussled. Penn was dragged by Petitioner to the back of the house. Penn claimed that he tore a banister out of the wall and tore some of Petitioner's clothing during the struggle.

Petitioner eventually dragged Penn upstairs to a bedroom. Petitioner threatened Penn with an empty champagne bottle and a steak knife. Petitioner then attempted to have anal sex with Penn, but Penn told him to go downstairs to get some vaseline as a lubricant first. While Petitioner was downstairs, Penn attempted to call the police, but Petitioner picked up another extension of the telephone. Petitioner came back upstairs and forced Penn to engage in multiple acts of oral and anal sex. While having sex with Penn, Petitioner bit his lip so hard that it began to bleed. Penn ultimately got away from Petitioner and left his house, while locking Petitioner inside behind an iron or metal grate. Penn went to a neighbor's house to contact the police. Penn testified that the police arrived, but laughed at him and did not do their jobs properly.

Penn testified that he was H.I.V. positive, which caused him to fatigue easily. Penn denied smoking crack cocaine, explaining that smoking crack would suppress his immune system and exacerbate his illness. Penn further indicated that he had already developed the symptoms of A.I.D.S., including weight loss and lesions.

Penn testified that certain items were taken by Petitioner. However, none of these items were found during a pat-down search of Petitioner.

On cross-examination, Penn admitted that the police did not take any of Petitioner's clothes into evidence and further acknowledged that a picture of Petitioner which had been taken on the night of the incident did not show Petitioner's clothes to have been torn. Penn claimed that he had been bleeding after the sexual assault and had cleaned himself up with a towel, but indicated that the police did not take this towel into evidence and that he had,

in fact, thrown it away. Penn further claimed that hospital staff at Detroit Receiving Hospital did not know why he was there or that he needed a rape shield kit. Penn admitted that the nurses allowed him to go to the bathroom and drink hot chocolate, which should not have been permitted, because evidence could have been destroyed. Penn claimed that when he arrived at the hospital, hospital staff already knew that he was H.I.V. positive.

J. Blacksher testified that he was a friend of Robert Penn. On December 27, 1993, Blacksher received a telephone call from Penn at about 4:00 a.m. Blacksher could barely understand what Penn was saying, because he was hysterical and excited. When Blacksher arrived at Penn's house, police officers were already there. Blacksher described Penn as being hysterical and almost incoherent. Penn was dressed only in a nightshirt. Blacksher testified that he took Penn to the hospital. Blacksher, however, testified that he was not planning on going to Penn's house until he received the telephone call, and that Penn, as far as he knew, was not waiting for him to come over to his house that night. Blacksher testified that he had known Penn for a year and had never witnessed him smoke crack cocaine. Blacksher admitted on cross-examination that he never saw a towel with blood on it, never saw a nightshirt with blood on it, or blood anywhere in Penn's house.

Several Detroit police officers testified for the prosecution. Upon arriving at Penn's house, several of the officers testified that Penn appeared excited, distraught, or scared. Penn told one officer, Mark Barr, that "a man forced sex on him in his own house" and that the man had been armed with a screwdriver. Barr later elaborated on his testimony by indicating that Penn told him that Petitioner had held a knife to his neck, forced him into an upstairs bedroom, and forced him to have anal sex. When Officer Barr went inside of Penn's house, he discovered Petitioner behind a locked metal grate. Petitioner informed Officer Barr that he and Penn had been arguing, but denied sexually assaulting Penn.

Officer Allen Thomas' testimony was similar to Officer Barr's, except that he testified that Penn had told him that the man in his house had been armed with a gun. Officer Thomas searched Petitioner, but did not find a gun.

Officers Barr and Thomas both denied laughing at Penn or treating him insensitively. None of the police officers in this case ever saw a bloody towel in Penn's house. None of the officers saw any blood coming from Petitioner's lip, nor did they notice any banister having been ripped out of a wall.

Following his arrest, Petitioner made a statement to Officer Lori Smith of the Detroit Police Department's Sex Crimes Unit. Petitioner informed Officer Smith that he had known Penn since 1986, when Petitioner was working at 1300 Lafayette. Petitioner told Smith that he had run into Penn at a party store near East Seven Mile Road and Dequindre at about 11:00 p.m. on the night of the incident. Petitioner claimed that Penn was with a lady, although he didn't know her name. Petitioner told Smith that this woman asked him if he could obtain some crack cocaine for them. Penn also asked Petitioner if he could get them some cocaine. Penn gave Petitioner his address. Petitioner obtained some cocaine and went to Penn's house. Penn was there with the woman and an unidentified black male. Penn did not have enough money for the cocaine, but informed Petitioner that he would have the money within a half hour to an hour. Petitioner left Penn's house and went to his friend "J.B.'s" house, staying there until 1:30 a.m. When he returned to Penn's

house, Penn asked for two more rocks or "dimes" of crack. Petitioner asked Penn if he had his money, to which Penn replied that he did not have all of it. Penn promised to get Petitioner his money. The unidentified man and woman each paid Petitioner for their rocks of cocaine.

Petitioner returned to "J.B's" house, remaining there until 2:00–2:30 a.m. Petitioner told Officer Smith that when he returned to Penn's house, the man and woman were arguing with Penn because "he was tripping out all on the floor." According to Petitioner, the man and woman left the house. Petitioner indicated that Penn still owed him $ 20.00. Petitioner followed Penn upstairs and discovered him trying to "hit" the stem of the crack pipe. Petitioner again asked Penn for his money. Petitioner noticed that Penn was "bullshitting", and became angry. Petitioner told Officer Smith that he asked Penn "How you gonna play me, you think I'm a motherfucking fool?" Petitioner told Officer Smith he picked up a champagne bottle, held it at his side, and asked for his money. Petitioner then pushed Penn onto the bed and slapped him across the top of the head. Petitioner grabbed Penn by the collar and slapped him again. Petitioner then grabbed a steak knife and again demanded his money. Petitioner acknowledged that he threatened to kill Penn. Penn begged Petitioner not to hurt him and promised to get him his money. Petitioner turned to pick up the champagne bottle and throw it at Penn, when Penn jumped over the railing down the stairs. When Petitioner ran to get downstairs, Penn locked him behind an iron gate. Because Petitioner was unable to get out, he began taking items, including some earrings and two watches which be-

longed to Penn. Petitioner, however, denied sexually assaulting Penn.

Following the testimony, Petitioner's statement to the police, a medical report, and a sexual assault form were admitted into evidence.

Petitioner's conviction was affirmed on appeal. *People v. Malcum,* 180252, 1997 WL 33353628 (Mich.Ct.App. March 28, 1997); *lv. den.* 456 Mich. 941, 575 N.W.2d 558 (1998). Petitioner thereafter filed a post-conviction motion for relief from judgment, which was denied pursuant to M.C.R. 6.508(D)(3). *People v. Malcum,* 94–0489 (Wayne County Circuit Court, Criminal Division, October 20, 2000).[1] The Michigan appellate courts denied Petitioner leave to appeal pursuant to M.C.R. 6.508(D). *People v. Malcum,* 236024 (Mich.Ct.App. October 24, 2001); *lv. den.* 466 Mich. 857, 644 N.W.2d 760 (2002).

Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

I. Defendant Malcum is entitled to a new trial where his trial counsel was ineffective for failing to verify that the alleged victim was infected with HIV virus and AIDS.

II. Defendant Malcum is entitled to a new trial where the evidence presented against him was insufficient, given that it was inherently incredible and could not have convinced a reasonable trier of fact of his guilt.

III. The trial court clearly erred and created an unconstitutional presumption that the complainant was credible and impermissible (sic) elevated the status of Robert Penn's testimony by instructing jurors that his testimony, by itself, was sufficient to convict.

1. In 1996, the Michigan Legislature abolished the Detroit Recorder's Court and merged its functions with the Wayne County Circuit Court. *See Anthony v. Michigan,* 35 F.Supp.2d 989, 996–997 (E.D.Mich.1999).

IV. Mr. Malcum is entitled to a new trial where his conviction was obtained in violation of his state and federal constitutional right to the effective assistance of counsel.

V. The Detroit Police Department and the prosecution denied Mr. Malcum of his constitutional right to due process and a fair trial by failing to investigate the charges and by repeat instances of prosecutorial misconduct.

## II. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

 A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the

law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409, 120 S.Ct. 1495. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410–11, 120 S.Ct. 1495.

## III. Discussion

### A. The procedurally defaulted claims.

For purposes of judicial clarity, the Court will first address Petitioner's third, fourth, and fifth claims, because respondent contends that they are procedurally defaulted.

 When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice". *Coleman v. Thompson*, 501 U.S. 722, 750–751, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). If petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479–480, 106 S.Ct. 2678, 91 L.Ed.2d 397 (1986). To be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513

U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Moreover, actual innocence, which would permit collateral review of a procedurally defaulted claim, means factual innocence, not mere legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998).

■ Respondent contends that Petitioner's third claim involving the trial court's jury instruction that the victim's testimony need not be corroborated is procedurally defaulted because Petitioner failed to object to the instruction at trial. The Michigan Court of Appeals indicated that because Petitioner failed to object at the trial level and there was no manifest injustice, they declined to address the issue. *People v. Malcum,* Slip. Op. at * 3. The Michigan Court of Appeals' limited review of the unobjected to error for manifest injustice does not constitute a waiver of the procedural default by the State of Michigan. *Millender v. Adams,* 187 F.Supp.2d 852, 878 (E.D.Mich.2002). Petitioner's third claim is procedurally defaulted.

■ With respect to his third claim, Petitioner has not advanced any reasons to excuse the procedural default. Because Petitioner has not demonstrated any cause for his procedural default, it is unnecessary for this Court to reach the prejudice issue. *Smith v. Murray,* 477 U.S. at 533, 106 S.Ct. 2661; *Bell v. Smith,* 114 F.Supp.2d 633, 638 (E.D.Mich.2000). Additionally, Petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider his claim as a ground for a writ of habeas corpus in spite of the procedural default. Petitioner's sufficiency of evidence claim (Claim # II) is insufficient to invoke the actual innocence exception to the procedural default doctrine. *See Anthony v. Schuppel,* 86 F.Supp.2d 531, 538 (D.Md.2000). Although Petitioner has also presented some evidence which could impeach the victim's testimony, impeachment evidence is also insufficient to justify invoking the fundamental miscarriage of injustice exception to the procedural default rule. *See Harris v. Stegall,* 157 F.Supp.2d 743, 750–51 (E.D.Mich. 2001). Because Petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declined to review Petitioner's third claim on the merits. *Welch v. Burke,* 49 F.Supp.2d 992, 1007 (E.D.Mich.1999).

■ Respondent contends that Petitioner's fourth and fifth claims are procedurally defaulted, because Petitioner raised these claims for the first time in his post-conviction motion for relief from judgment and failed to establish cause and prejudice, as required by M.C.R. 6.508(D)(3), for failing to raise the issues on his appeal of right. In this case, the Michigan Supreme Court denied Petitioner's application for leave to appeal the denial of his post-conviction motion on the ground that Petitioner failed to "meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)". This brief statement is sufficient to constitute a procedural bar to federal habeas relief. *See Simpson v. Jones,* 238 F.3d 399, 407–408 (6th Cir.2000)(rejecting the idea that this brief form order was an unexplained order that could not serve to procedurally default a habeas petitioner). Moreover, even if the Michigan Supreme Court's order was considered an unexplained order, Petitioner's fourth and fifth claims would still be procedurally defaulted. If the last state court judgment is an unreasoned order simply affirming the conviction, a federal habeas court should "look through" the last order and examine the preceding reasoned order, and if that opinion explicitly relied on a procedural bar, the court should presume that the last state court

judgment likewise relied on that bar. *Alvarez v. Straub,* 64 F.Supp.2d 686, 692 (E.D.Mich.1999)(*citing to Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991)). In denying Petitioner's motion for relief from judgment in this case, the trial court expressly relied on the provisions of M.C.R. 6.508(D)(3) in its opinion and denied Petitioner relief on the ground that Petitioner had failed to show cause for failing to raise his claims on direct appeal. Petitioner's claims are therefore procedurally defaulted. *See Richardson v. Elo,* 974 F.Supp. 1100, 1104 (E.D.Mich.1997).

 With respect to his fourth and fifth claims, Petitioner contends that he can establish cause to excuse his procedural default because of the ineffective assistance of appellate counsel. Ineffective assistance of counsel may be cause for procedural default. *Murray v. Carrier,* 477 U.S. at 488, 106 S.Ct. 2678. Not just any deficiency in counsel's performance will excuse a procedural default, however; the assistance must have been so ineffective as to violate the Federal Constitution. *Edwards v. Carpenter,* 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000). Attorney error that falls short of constitutional ineffective assistance of counsel does not constitute cause to excuse a procedural default. *Bruton v. Phillips,* 64 F.Supp.2d 669, 682–683 (E.D.Mich.1999).

 The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey,* 469 U.S. 387, 396–397, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). An attorney's failure to present a nonmeritorious issue on appeal does not constitute ineffective assistance of counsel. *Daniel v.*

*Overton,* 845 F.Supp. 1170, 1176 (E.D.Mich.1994). A habeas petitioner cannot demonstrate that he was prejudiced because of appellate counsel's failure to raise a meritless error or an error that is harmless. *See Rosales v. Cockrell,* 220 F.Supp.2d 593, 625–626 (N.D.Tex.2001).

A limited review of Petitioner's fourth and fifth claims, which will be discussed below, reveals that they are without merit. Appellate counsel was therefore not ineffective for failing to raise them in Petitioner's appeal of right. Petitioner has failed to establish cause to excuse his default. Additionally, as indicated above, Petitioner has failed to offer this Court new reliable evidence of innocence that was not presented at trial which would excuse his default. *Schlup v. Delo,* 513 U.S. at 324, 115 S.Ct. 851. Petitioner's claims are therefore procedurally defaulted.

### 1. Claim # 4. The ineffective assistance of trial counsel claims.

In his fourth claim, Petitioner asserts various claims of ineffective assistance of trial counsel.

### a. Standard of Review

 To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, Petitioner must overcome the presumption that, under the circumstances,

the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

### b. The individual claims

### i. Failure to investigate or present witnesses

■ Petitioner first claims that his trial counsel was ineffective for failing to investigate or present witnesses.

■ Petitioner contends that trial counsel was ineffective for failing to investigate or call as witnesses the unidentified man and woman that Petitioner claims were with the victim on the night of the incident. Petitioner contends that these witnesses could have bolstered his claim that he had sold cocaine to the victim on the night in question and further offered testimony that the victim had been using cocaine that night and had been acting strangely. Petitioner, however, has failed to identify these individuals or present their proposed testimony to this Court or to the state courts. To present an ineffective assistance of counsel claim based on a failure to call a witness, a defendant must make an affirmative showing as to what the missing evidence would have been and prove that the witness' testimony would have produced a different result. *United States ex. rel. Jones v. Chrans,* 187 F.Supp.2d 993, 1009 (N.D.Ill.2002). Petitioner has failed to indicate the substance of the proposed testimony of any of these witnesses. Without some showing of their

proposed testimony, this Court is unable to determine if trial counsel's failure to investigate or to call these individuals as witnesses was either a professional lapse or a strategic or tactical choice. *Id.* The Court is also unable, in the absence of a showing as to what the witnesses' testimony would be, to determine whether Petitioner was prejudiced by the failure of trial counsel to interview or call these witnesses. *United States ex. rel. Jones v. Chrans,* 187 F.Supp.2d at 1009. In this case, trial counsel's failure to investigate, interview, or present these potential witnesses does not amount to the ineffective assistance of counsel, because Petitioner has failed to indicate the availability of these purported witnesses or specify the content of their testimony. *Dell v. Straub,* 194 F.Supp.2d 629, 650 (E.D.Mich.2002) (citations omitted). Petitioner's vague and speculative allegations that trial counsel was ineffective for failing to investigate these witnesses does not entitle him to habeas relief. *Id.*

■ Petitioner also claims that trial counsel was ineffective for failing to present alibi witnesses on his behalf. Although no evidentiary hearing was ever conducted on Petitioner's ineffective assistance of trial counsel claims in the state courts, Petitioner did file a request for investigation against his trial counsel, Earl Washington, with the Michigan Attorney Grievance Commission. In his response to the request for investigation, Mr. Washington indicated that he did not call any witnesses because Petitioner was present and arrested at the crime scene.[2] This Court further notes that Petitioner admitted to the police that he was present at the crime scene and had physically assaulted the victim to collect a drug debt, although he had denied

---

**2.** *See Letter from Earl Washington to the Attorney Grievance Commission,* September 9, 1996, Petitioner's Exhibit J.

the sexual assault. Trial counsel was not ineffective for failing to call alibi witnesses, where Petitioner's statement to the police, which established his presence at the crime scene at the time of the sexual assaults, was materially inconsistent with an alibi. *See Lindsey. v. Smith*, 820 F.2d 1137, 1152 (11th Cir.1987); *United States ex. rel. Rhoads v. Barnett*, 22 F.Supp.2d 765, 774 (N.D.Ill.1998). Additionally, Petitioner was not prejudiced by counsel's failure to call alibi witnesses, when any alibi that might have produced would have only covered part of the period of the crimes charged and would not have directly refuted testimony of Petitioner's involvement in the victim's sexual assault. *Cf. United States v. Andrews*, 953 F.2d 1312, 1327 (11th Cir.1992); *See also Trigones v. Hall*, 115 F.Supp.2d 158, 169 (D.Mass.2000)(counsel not ineffective for failing to interview potential alibi witnesses who would have only provided a "floating alibi" that did not cover the entire period during which the murder could have been committed).

### ii. Failure to object to testimony re the victim's H.I.V. status

■ Petitioner next claims that his counsel was ineffective for failing to object to the admission of testimony that the victim was H.I.V. positive, contending that the prosecution used the victim's H.I.V. status to bolster his credibility and to support the victim's claim that he did not use cocaine, because of the effect that this drug would have on his disease. Instead, defense counsel used the victim's H.I.V. status to argue to the jury that the victim was so debilitated by this disease that he could not have offered the amount of physical resistance that he had testified to at trial.

■ In evaluating an ineffective assistance of counsel claim, courts must not view a trial in hindsight, but must evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors. *Washington v. Hofbauer*, 228 F.3d 689, 702 (6th Cir.2000). In this case, counsel's decision to use the victim's H.I.V. status to attack his credibility, rather than to seek the exclusion of this evidence, was part of a plausible trial strategy that would defeat Petitioner's claim. *See e.g. Matos v. Miles*, 737 F.Supp. 220, 222 (S.D.N.Y.1990)(trial counsel's elicitation of damaging hearsay testimony from arresting officer on crossexamination regarding circumstances of the identification before defendant's arrest was part of a plausible trial strategy and thus could not form a basis of a claim for ineffective assistance of counsel).

### iii. Failure to allow Petitioner to testify

■ Petitioner next alleges that his counsel was ineffective for failing to allow Petitioner to testify. In his response to Petitioner's request for investigation, Petitioner's attorney indicated that the prosecutor had already placed Petitioner's statement to the police into evidence, which provided the jury with Petitioner's version of the events. Petitioner's counsel felt that if Petitioner took the witness stand, he would subject himself to impeachment if his testimony differed from his statement. Counsel further indicated that Petitioner agreed with his advice not to take the stand.

■ When a tactical decision is made by an attorney that a defendant should not testify, the defendant's assent is presumed. *Gonzales v. Elo*, 233 F.3d 348, 357 (6th Cir.2000). In the present case, Petitioner's counsel indicated that he made a tactical decision not to have Petitioner take the stand because Petitioner's version of the events had already been placed before the

jury through his statement to the police and counsel was afraid that Petitioner would be impeached with this prior statement if his testimony differed in any respects from the prior statement. Petitioner admits that counsel advised him not to testify because he was afraid that Petitioner could be impeached if his trial testimony differed from this statement. Because counsel's advice was a tactical decision, Petitioner's assent is presumed as is the effectiveness of Petitioner's counsel, barring any indication by Petitioner at trial that he disagreed with his counsel. *Id.* Because the record is void of any such indication by Petitioner at the time of trial, Petitioner has not overcome the presumption that he willingly agreed to counsel's advice not to testify or that his counsel rendered ineffective assistance of counsel. *Gonzales,* 233 F.3d at 357.

### iv. Failure to call the victim's treating physician as a witness

■ Petitioner next contends that counsel was ineffective for failing to call Dr. Alvan Cruz, the emergency room physician who treated the victim. Petitioner claims that Dr. Cruz' testimony would have bolstered his defense that there was no sexual assault, because the medical examination indicated the absence of any trauma to the victim.

In the present case, the prosecution and defense counsel stipulated to the admission of the medical reports and a sexual assault form. These reports indicated the absence of any oral, perineal, or genital trauma, debris, or discharge. In his closing argument, defense counsel argued that the medical reports indicated that there was no evidence of perineal or genital trauma or discharge and further noted that although the report indicated that a swab of the victim's rectum had been performed, there was no sign of rectal trauma and no indication that any seminal fluids had been recovered. Counsel argued that the medi-

cal records showed that there was no sign of any rectal trauma, thus contradicting the victim's testimony. (Trial Tr., 07/14/1994, pp. 124–125). Counsel also argued that the medical report had no indication that the victim had mentioned using a towel to clean himself up after the assault. (*Id.* at p. 118).

In the present case, Petitioner does not indicate what additional information Dr. Cruz would have provided to the jury. To the extent that Petitioner is arguing that Dr. Cruz could have explained to the jury that the absence of rectal trauma or discharge in the victim would have negated the victim's story that he had been sexually assaulted, such testimony would have been unnecessary.

In *Pruett v. Thompson,* 996 F.2d 1560, 1574 (4th Cir.1993), the Fourth Circuit held that counsel for a defendant charged with capital murder and rape was not ineffective for failing to request the appointment of a forensic pathologist for the purpose of testifying that the absence of lacerations or bruises around the victim's genitalia was consistent with consensual intercourse. In so ruling, the Fourth Circuit indicated that it had no hesitation in stating that "it does not take a forensic pathologist to conclude that absence of lacerations or bruises around a rape victim's genitalia is evidence consistent with consensual intercourse." *Id.* at 1574.

Relying upon the holding in *Pruett,* another judge in this district rejected a claim that counsel was ineffective for failing to present expert testimony about the lack of rectal trauma to a sexual assault victim in order to prove that no anal penetration had taken place. *Rich v. Curtis,* 2000 WL 1772628, * 5–6 (E.D.Mich. October 24, 2000). In rejecting this claim, the court noted that defense counsel had elicited the fact that no rectal trauma or abrasions had been found in the victim's anal canal and

remarked: "[I]t does not take an expert to conclude that the lack of such trauma could indicate the absence of forcible sexual assault." *Id.*

In the present case, defense counsel presented evidence, through the medical report and sexual assault form, which indicated a lack of perineal or genital trauma or discharge to the victim. Defense counsel argued that this evidence contradicted the victim's story that he had been sexually assaulted. It was not necessary for the jury to hear Dr. Cruz' testimony for them to conclude that the lack of such trauma or bodily fluids could have indicated the lack of forcible sexual assault in this case. Accordingly, Petitioner had failed to show that he was prejudiced by counsel's failure to call Dr. Cruz as a witness.

### v. Failure to call a Drug Paraphernalia Expert

██ Petitioner next contends that his attorney was ineffective for failing to call a drug paraphernalia expert to indicate that a clothes hanger that was recovered from the victim's house at the time of the assault could have been used by the victim to push the residue in the crack pipe to the front of the pipe, so that he could smoke it.

Petitioner has failed to demonstrate that he was denied the effective assistance of counsel from his trial counsel's failure to use or call an expert witness on drug paraphernalia, because he has failed to present any testimony to establish that an expert witness could have been obtained to testify favorably for him on this issue. *Dell v. Straub,* 194 F.Supp.2d at 650–651 (internal citation omitted).

### vi. Failure to request an impeachment instruction

██ Petitioner contends that trial counsel was ineffective for failing to request an impeachment instruction. The Court assumes that Petitioner is referring to Michigan Standard Jury Instruction, Impeachment by a Prior Inconsistent Statement. CJI 2d 4.5.

With respect to Petitioner's claim that counsel was ineffective for failing to request an instruction on the use of prior inconsistent statements for impeachment purposes, Petitioner is unable to show how he was prejudiced by this failure. Had this instruction been given, the jury would have been advised that they could only use the witness' prior inconsistent statements for impeachment purposes, and not as substantive evidence. Therefore, counsel was not ineffective for failing to request an instruction on impeachment of a witness by prior inconsistent statements, where the instruction would have actually precluded the jury from considering the victim's prior inconsistent statements as substantive evidence that could possibly support Petitioner's claim of innocence. *See Millender v. Adams,* 187 F.Supp.2d at 874.

### c. Conclusion

Given that this Court has determined that Petitioner's ineffective assistance of trial counsel issues are insufficient to warrant habeas relief, it would be impossible for Petitioner to establish that appellate counsel's failure to raise the ineffective assistance of trial counsel issues on appeal was prejudicial. *See United States ex. rel. Thirston v. Gilmore,* 986 F.Supp. 491, 502 (N.D.Ill.1997). Therefore, Petitioner has failed to establish cause to excuse the default of his fourth claim.

### 2. Claim # 5. The police/prosecutorial misconduct claims.

In his fifth claim, Petitioner alleges that he was denied a fair trial because of police or prosecutorial misconduct.

### a. Failure to preserve potentially exculpatory evidence

■■■ Petitioner first claims that the police failed to search for, or preserve, potentially exculpatory evidence.

■■■ The failure of police to preserve potentially useful evidence for a defendant is not a denial of due process of law unless the defendant can show bad faith on the part of police. *Arizona v. Youngblood,* 488 U.S. 51, 57–58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). When the state fails to preserve evidentiary material "of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant," a defendant must show: (1) that the government acted in bad faith in failing to preserve the evidence; (2) that the exculpatory value of the evidence was apparent before its destruction; and (3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other means. *Monzo v. Edwards,* 281 F.3d 568, 580 (6th Cir.2002). A habeas petitioner has the burden of establishing that the police acted in bad faith in failing to preserve potentially exculpatory evidence. *Lile v. McKune,* 45 F.Supp.2d 1157, 1163 (D.Kan.1999)(internal citations omitted). The mere fact that the police had control over evidence and failed to preserve it is insufficient, by itself, to establish bad faith, nor will bad faith be found in the government's negligent failure to preserve potentially exculpatory evidence. *Id.* "The presence of absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood,* 488 U.S. at 56, 109 S.Ct. 333, n.

■■■ Petitioner's claim fails because he has failed to show that the police acted in bad faith in failing to preserve this evidence. More importantly, Petitioner has failed to show that this evidence was even potentially exculpatory. Even if the police acted in bad faith in failing to preserve or test this evidence, there is no due process violation where the destroyed evidence has only speculative exculpatory value. *United States v. Jobson,* 102 F.3d 214, 219 (6th Cir.1996); *Jones v. McCaughtry,* 965 F.2d 473, 479 (7th Cir.1992). Finally, Petitioner has presented no evidence to show that the police knew that this evidence was potentially exculpatory at the time that they investigated the crime. Petitioner's conclusory allegations regarding the alleged destruction of potentially exculpatory material fail to establish that the police, in bad faith, destroyed any evidence with knowledge of its exculpatory value. *See Little v. Johnson,* 162 F.3d 855, 862 (5th Cir.1998).

### b. The prosecutor's closing argument

■■■ Petitioner further claims that the prosecutor impermissibly shifted the burden of proof and commented on his failure to testify during his summation by arguing that there was no evidence, proof, or corroboration to support Petitioner's story to the police that there were drugs in the victim's house and that the victim had been smoking cocaine on the night in question.

■■■ While a prosecutor may not comment on the defendant's failure to testify or produce evidence, the prosecutor may summarize the evidence and comment upon "its quantitative and qualitative significance." *United States v. Bond,* 22 F.3d 662, 669 (6th Cir.1994). In the present case, Petitioner's defense was that the victim had falsely accused him of sexual assault after Petitioner physically assaulted him over a drug debt. The prosecutor merely argued that there was no evidence which had been presented to support such

a defense, other than Petitioner's own statement to the police. It is not error for a prosecutor to comment upon a defendant's failure to produce evidence on a phase of the defense upon which the defendant seeks to rely. *United States v. Robles–Vertiz,* 155 F.3d 725, 731 (5th Cir. 1998). A prosecutor is free to comment upon a defendant's failure to support his factual theories with witnesses. *See United States v. Yuzary,* 55 F.3d 47, 53 (2nd Cir.1995). In the present case, the prosecutor merely commented upon the defense's evidence, which he was permitted to do. *See Seymour v. Walker,* 224 F.3d 542, 559 (6th Cir.2000). In addition, general references by the prosecutor to the evidence being uncontradicted, while not recommended, does not reflect upon a defendant's failure to testify where witnesses other than the defendant could have contradicted the evidence. *Byrd v. Collins,* 209 F.3d 486, 534 (6th Cir.2000)(quoting *Raper v. Mintzes,* 706 F.2d 161, 164 (6th Cir.1983)). In this case, there were other witnesses, namely the police and J. Blacksher, who could have provided evidence to rebut the victim's claim that he was not using drugs on the night in question. Accordingly, the prosecutor's summation did not deprive Petitioner of a fair trial.

### c. The use of perjured testimony

 Petitioner lastly contends that the prosecutor knowingly used perjured testimony to obtain a conviction against him.

 The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States,* 405 U.S. 150, 153, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959)(internal citations omitted). To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell,* 161 F.3d 320, 343 (6th Cir. 1998). However, a habeas petitioner must show that a witness' statement was "indisputably false", rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins,* 209 F.3d at 517–518. A habeas petitioner has the burden of establishing a *Giglio* violation. *See Foster v. Ward,* 182 F.3d 1177, 1191 (10th Cir.1999).

 Mere inconsistencies in testimony do not establish the knowing use of false testimony by the prosecutor. *Coe v. Bell,* 161 F.3d at 343. Additionally, the fact that a witness contradicts himself or herself or changes his or her story also does not establish perjury. *Monroe v. Smith,* 197 F.Supp.2d 753, 762 (E.D.Mich. 2001). A habeas petition should be granted if perjury by a government witness undermines the confidence in the outcome of the trial. *Id.*

In the present case, most of the testimony that Petitioner alleges was perjured involved inconsistencies in the victim's testimony. This is insufficient to establish the knowing use of perjured testimony. Petitioner is unable to establish that any of the testimony in this case was perjured or that it was material to his conviction.

### d. Conclusion

Petitioner has not shown that his prosecutorial or police misconduct claims are meritorious. Appellate counsel was therefore not ineffective for failing to raise

these claims in Petitioner's appeal of right. Petitioner's fifth claim is defaulted.

## B. Claim # 1. The ineffective assistance of counsel claim.

 In his first claim, Petitioner contends that his trial counsel was ineffective for failing to verify whether the victim in this case actually was infected with the A.I.D.S. virus or was H.I.V. positive. Petitioner claims that he has medical records which establish that the victim did not suffer from A.I.D.S. or H.I.V. Petitioner, however, has not provided this Court with definitive proof that the victim was not infected with the A.I.D.S. virus, nor does he indicate which medical records support his claim. The only evidence that Petitioner points to is a report conducted by his investigator William E. Turnbull, in which Turnbull spoke with medical staff at Detroit Receiving Hospital after they had reviewed the victim's medical records upon Turnbull's request. Turnbull's report states, in pertinent part:

"PAST MEDICAL HISTORY: states that the patient is H.I.V. positive. Medications are none at this time. Allergies are none. Which staff states that this is highly questionable because anyone thats (sic) been diagnosed with having H.I.V. would have been prescribed medications." [3]

It is unclear from this ambiguous comment, however, whether the staff indicated that it was highly questionable whether the victim had H.I.V., or whether they questioned his statement that he was not taking any medications, in light of his H.I.V. status. Turnbull further indicated that there had been a review of "the system" to indicate whether the victim had been diagnosed or treated for H.I.V. in the past. However, it is unclear which system that Turnbull was referring to. In fact, at the end of his report, Turnbull indicated

that he would engage in further investigation into the victim's H.I.V. status from other health departments in the Detroit and Michigan areas. Turnbull's report was signed and dated January 2, 1997. Petitioner has provided no additional evidence to support his allegation that the victim did not suffer from H.I.V.

 Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *Reedus v. Stegall,* 197 F.Supp.2d 767, 782 (E.D.Mich.2001). In the present case, Petitioner has failed to provide definitive proof to this Court that the victim was not H.I.V. positive. This alone defeats Petitioner's claim.

Moreover, Petitioner is unable to establish that he was prejudiced by counsel's failure to fully investigate the victim's H.I.V. status. At most, the issue of whether the victim was H.I.V. negative went to his general credibility. As the Michigan Court of Appeals noted in its opinion, the victim's credibility was repeatedly attacked by defense counsel throughout the trial. Any failure of counsel to impeach the victim with the fact that he was not H.I.V. positive went to his general credibility and involved at most cumulative impeachment evidence, and would thus not support a finding of ineffective assistance of counsel. *See United States v. Pagan,* 829 F.Supp. 88, 92 (S.D.N.Y.1993). Petitioner is not entitled to habeas relief on his first claim.

## C. Claim # 2. The sufficiency of evidence claim.

In his second claim, Petitioner contends that there was insufficient evidence to convict him because the victim's credibility was inherently incredible.

---

3. *See* Turnbull's report, Petitioner's Exhibit M.

A habeas court reviews claims that the evidence at trial was insufficient for a conviction by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Scott v. Mitchell,* 209 F.3d 854, 885 (6th Cir.2000)(citing to *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Because a claim of insufficiency of the evidence presents a mixed question of law and fact, this Court must determine whether the state court's application of the *Jackson* standard was reasonable. *Dell v. Straub,* 194 F.Supp.2d at 647 (internal citation omitted). A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court. *Marshall v. Lonberger,* 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris,* 972 F.2d 675, 679 (6th Cir.1992).

In the present case, Petitioner claims that the evidence was insufficient because the victim's testimony was "inherently incredible." Attacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence. *Martin v. Mitchell,* 280 F.3d 594, 618 (6th Cir.2002); *cert. den.* 537 U.S. 1004, 123 S.Ct. 515, 154 L.Ed.2d 1004 (2002)(internal citation omitted). An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker,* 231 F.3d 265, 286 (6th Cir.2000). The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Id.* In examining a claim of insufficiency of evidence in habeas corpus, a federal court must presume that the jury's findings in evaluating the credibility of

the witnesses is correct and may ignore the testimony only when it finds it to be "inherently incredible". *Switzer v. Hannigan,* 45 F.Supp.2d 873, 877 (D.Kan. 1999). Such a finding may be made only where the testimony is 'unbelievable on its face'; i.e. testimony as to facts that the witness physically could not possibly have observed or events that could not have occurred under the laws of nature. *Id.* Inconsistencies in a witness' testimony, however, do not render that witness' testimony to be inherently incredible. *See e.g. Bergmann v. McCaughtry,* 65 F.3d 1372, 1378 (7th Cir.1995).

In the present case, Petitioner was convicted of first-degree criminal sexual conduct under a theory that he was armed with a weapon or an article fashioned in a manner to lead the victim to believe it to be a weapon. An act of first-degree criminal sexual conduct is committed when there is an intrusion into the genital or anal opening of another person under one of the enumerated circumstances in the first-degree criminal sexual conduct statute. *See People v. Garrow,* 99 Mich.App. 834, 837–838, 298 N.W.2d 627 (1980). A defendant can also be convicted of first-degree criminal sexual conduct if he uses a weapon to force the victim to perform oral sex on him. *See e.g. People v. Ellis,* 174 Mich.App. 139, 145, 436 N.W.2d 383 (1988). The elements of larceny in a building include the actual or constructive taking of goods or property, the carrying away or asportation with felonious intent of goods and property of another, without the consent and against the will of the owner, within the confines of a building. *People v. Mumford,* 171 Mich. App. 514, 517–518, 430 N.W.2d 770 (1988).

In the present case, there was sufficient evidence to convict Petitioner of first-degree criminal sexual conduct, where the victim testified that he was

forced to perform fellatio on Petitioner and to allow Petitioner to perform anal sex on him, after Petitioner brandished a screwdriver, champagne bottle, and a steak knife at him. There was also sufficient evidence to convict Petitioner of larceny in a building, where the victim testified that certain items had been taken from the house and Petitioner admitted to the police that he had taken some watches and earrings from the victim. Although there were inconsistencies between the victim's testimony and that of the other witnesses, as well as discrepancies between the findings in the medical records and the victim's testimony, the victim's testimony was not 'unbelievable on its face'; in that the victim did not testify as to facts that he physically could not possibly have observed, nor did he describe events that could not have occurred under the laws of nature. The Court concludes that the evidence presented at trial was sufficient to permit a rational trier of fact to conclude that Petitioner committed the offense of first-degree criminal sexual conduct. Because the Michigan Court of Appeals accurately summarized the facts in this case and made a reasoned decision in applying the 'no rational trier of fact' standard, the state court's decision was neither contrary to, or an unreasonable application of existing federal law as determined by the U.S. Supreme Court. *Welch v. Burke,* 49 F.Supp.2d at 1000. Petitioner has failed to show that he is entitled to habeas relief from this court on his second claim.

### IV. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is DISMISSED WITH PREJUDICE.

### *JUDGMENT*

The above entitled matter having come before the Court on a Petition for Writ of Habeas Corpus, Honorable Denise Page Hood, a United States District Judge, presiding, and in accordance with the Memorandum Opinion and Order entered on JUL 30, 2003.

IT IS ORDERED AND ADJUDGED that the Petition for Writ of Habeas Corpus is DISMISSED.